UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JASMINE GUARDA,

    Plaintiff,

v.                                                                           Case No. 6:17-cv-756-Orl-37TBS

THE CITY OF MELBOURNE,
FLORIDA; CHIEF STEVE MIMBS; and
SGT. (FORMER) BLAKE LANZA,

    Defendants.

## ORDER

In this action, Defendants Steve Mimbs, police chief for the City of Melbourne, Florida ("**Chief Mimbs**") and the City of Melbourne ("**City**") move for dismissal of several of Plaintiff's claims. (Doc. 21.) For the reasons set forth below, the motion is due to be granted in part and denied in part as moot.

### I. BACKGROUND[1]

On December 14, 2014, Plaintiff alleges she was victimized twice. (Doc. 1, ¶¶ 11, 12, 16.) First, she was assaulted by an unknown male assailant. (*Id.* ¶ 12.) Second, by a sergeant with the Melbourne police department, Blake Lanza ("**Sgt. Lanza**"), who, inexplicably and without provocation, grabbed Plaintiff, "body-slammed" her to the ground, and hit her with closed fists. (*Id.* ¶ 16.) Sgt. Lanza then arrested Plaintiff, charged

---

[1] The following facts from Plaintiff's Complaint (Doc. 1) are taken as true and construed in the light most favorable to Plaintiff. *See Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003).

her with resisting an officer without violence and disorderly conduct, and allegedly falsified the probable cause affidavit substantiating Plaintiff's arrest and his use of force. (*Id.* ¶¶ 16, 18.) Following her arrest, Plaintiff overheard Sgt. Lanza comment that he had arrested Plaintiff because "Latin women are always angry." (*Id.* ¶ 17.)

Infected with "an atmosphere of police misconduct" that included the use of excessive force, Plaintiff alleges that the City condoned Sgt. Lanza's misconduct by failing to take corrective action despite knowledge that Sgt. Lanza was unfit to serve as a police officer. (*Id.* ¶ 24, 25.) Plaintiff alleges that the City and Chief Mimbs knew of "numerous prior incidents" concerning Sgt. Lanza's "harassment, [use of] racially insensitive language, aggressive behavior, and [falsification of] affidavits" along with his disciplinary history "for lacking competency, knowledge of the law, using inappropriate language, retaliating against other officers in the workplace, sexual harassment, and many other sustained complaints" ("**Alleged Misconduct**"). (*Id.* ¶¶ 21, 22, 41.) Chief Mimbs ultimately terminated Sgt. Lanza in 2015 after conducting an investigation that began in October of 2013. (*Id.* ¶ 23.) In support of his decision, Chief Mimbs stated that Sgt. Lanza's "every action and statement will be suspect in the eyes of the community." (*Id.*)

Based on the foregoing, Plaintiff filed a five-count Complaint against Sgt. Lanza, Chief Mimbs, and the City. (Doc. 1.) Specifically, Plaintiff asserts two federal claims: (1) an unlawful arrest and use of excessive force claim against Sgt. Lanza ("**Count I**"); and (2) a municipal liability claim against Chief Mimbs and the City ("**Count II**"). (Doc. 1, ¶¶ 33–55.) In addition, Plaintiff lodges three state-law claims against the City for battery

("**Count III**"), false arrest ("**Count IV**"), and negligent retention ("**Count V**"). (*Id.* ¶¶ 56–79.) On May 25, 2017, the City and Chief Mimbs moved for dismissal of: (1) Counts II and V on the ground that Plaintiff failed to state a claim; and (2) Plaintiff's requested attorney fees in Counts III–V. (Doc. 21 ("**MTD**").) As the MTD has been fully briefed (*see* Doc. 25), it is ripe for the Court's adjudication.

## II. LEGAL STANDARDS

### A. General Pleading Standards

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When a complaint fails "to state a claim to relief that is plausible on its face" and merely offers "labels and conclusions," the defendant may seek dismissal of the complaint under Rule 12(b)(6). *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When considering a Rule 12(b)(6) motion, courts also must accept all well-pled factual allegations—but not legal conclusions—in the complaint as true and construed in the light most favorable to Plaintiff. *Speaker v. U.S. Dept. of Health & Human Servs. Ctrs. for Disease Control*, 623 F.3d 1371, 1379 (11th Cir. 2010). After disregarding any legal conclusions made, the court must determine whether the complaint includes "factual content" sufficient to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678-79 (citing *Twombly*, 550 U.S. at 556).

### B. Municipal Liability Under 42 U.S.C. § 1983

Section 1983 provides aggrieved persons with a procedural mechanism to seek redress for constitutional violations that are committed while a defendant is acting under

color of state law. 42 U.S.C. § 1983. A municipality may be liable under § 1983 where a plaintiff shows: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation. *See Monell v. N.Y.C. Dep't of Social Servs.*, 436 U.S. 658, 690, 694 (1978); *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). A custom or policy can be established by showing that: (1) the municipality's legislative body enacted an official policy on point; (2) the final policymakers for the municipality "have acquiesced in a longstanding practice that constitutes the entity's standard operating procedure"; or (3) someone with final policymaking authority adopts or ratifies the unconstitutional act or decision of a subordinate. *Hoefling v. City of Miami*, 811 F.3d 1271, 1279 (11th Cir. 2016).

### III.  ANALYSIS

As an initial matter, Plaintiff seeks to sue Chief Mimbs in his official capacity. (*See* Doc. 1, p. 1.) But a suit against a governmental officer "in his official capacity" is the functional equivalent of one against the entity of which the officer is an agent. *MacMillan v. Monroe Cty.*, 520 U.S. 781, 785 n.2 (1997); *Cooper v. Dillon*, 403 F.3d 1208, 1221 n.8 (11th Cir. 2005). Thus, Chief Mimbs is due to be terminated as a party to this action.

### A.  Municipal Liability

In Count II, Plaintiff asserts a claim against the City for municipal liability based on two theories: (1) the City's failure to train its employees ("**Failure to Train Theory**"); and (2) ratification of Sgt. Lanza's conduct ("**Ratification Theory**").

(Doc. 1, ¶¶ 42, 43, 46, 50.) Asserting that Plaintiff has not sufficiently alleged either theory, the City seeks dismissal. (Doc. 21, pp. 4–9.) The Court agrees with the City.

### 1. Failure to Train Theory

In limited circumstances, a municipality's failure to train its employees may rise to the level of an official government policy for purposes of § 1983. *Connick v. Thompson*, 563 U.S. 51, 61 (2011); *see also City of Canton v. Harris*, 489 U.S. 387, 388 (1989). To be actionable, the failure to train employees "in a relevant respect must amount to deliberate indifference to the rights of persons with whom the untrained employees come into contact." *Connick,* 563 U.S. at 61. Deliberate indifference is a stringent standard. *Id.* A municipality may be deemed deliberately indifferent if it maintains a "'policy of inaction' in light of actual or constructive notice that a particular omission in their training program will cause constitutional violations." *Id.* For purposes of a failure to train theory, a plaintiff must ordinarily demonstrate a "pattern of similar constitutional violations by untrained employees." *See id.* at 62; *see also Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1328–29 (11th Cir. 2015) (affirming dismissal of the plaintiff's failure to train claim because he failed to allege a pattern of similar constitutional violations by untrained employees); *see also, e.g., Espinoza v. Harrelson*, No. 6:15-cv-1923-Orl-37GJK, 2016 WL 39826497, at *5 (M.D. Fla. Jul. 21, 2016) (dismissing plaintiff's failure-to-train claim because plaintiff did not allege relevant specific instances to support a policy under *Monell*).[2]

---

[2] *Cf. Johnson v. City of Daytona Beach*, No. 6:16-cv-941-Orl-40TBS, 2017 WL 119744, at *5 (M.D. Fla. Jan. 12, 2017) (finding that the plaintiff had adequately pled a failure to

Here, Plaintiff alleges that the City failed "to instruct, supervise, control, and discipline." (Doc. 1. ¶ 45.) In support, Plaintiff recites Sgt. Lanza's Alleged Misconduct. (*Id.* ¶ 41.) But apart from the instant case, she does not allege a single instance where Sgt. Lanza employed, or was disciplined for, the use of excessive force. (*See id.* ¶¶ 41, 42.) It is true that the complaint recites a litany of character or behavioral traits attributed to Sgt. Lanza, but none are fact specific and none are alleged to be the cause of Plaintiff's injuries. (*See id.* ¶¶ 22, 27.) Instead, Plaintiff contends that the Alleged Misconduct results from a failure to train of which the City had notice. (Doc. 25, p. 6.) The facts alleged do not plausibly support this inferential leap. To begin, the Complaint does not identify a particular omission in the City's training program. Rather, Plaintiff points to the City's policies and training generally. (Doc. 1, ¶ 42.) In addition, Plaintiff relies on imprecise and conclusory allegations, untethered to the use of excessive force and devoid of even minimal factual development, which do not approach the requisite pleading of a pattern of similar constitutional violations. (*See id.* ¶ 41.) Having failed to establish a pattern of constitutional violations, Plaintiff's allegations concerning the City's constructive or actual notice of such a failure are necessarily deficient. Consequently, Plaintiff has not met the deliberate indifference standard and has failed to sufficiently plead her Failure to Train Theory.

---

train by alleging twenty-four prior incidents of defendants' misconduct related to the use of excessive force); *Rivas v. Figueroa*, No. 11-23195-Civ., 2012 WL 1378161, at *4 (S.D. Fla. Apr. 20, 2012) (denying the defendant's motion to dismiss because the plaintiff had sufficiently pled a failure to train by alleging five instances where officers had unlawfully searched and seized personal property).

### 2. Ratification Theory

Plaintiff also tacitly alleges that the City ratified Sgt. Lanza's conduct. (Doc. 1, ¶ 53.) A "persistent failure to take disciplinary action against officers" who use excessive force, "can give rise to an inference that a municipality has ratified" such conduct, thereby establishing a "custom" for purposes of municipality liability. *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1443 (11th Cir. 1985). But even under this theory, courts have required a plaintiff to establish a widespread policy of the relevant constitutional violations and that the prior conduct is sufficiently similar. *See, e.g., Pellegrino v. Wengert*, No. 15-CIV-60535, 2015 WL 4065376, at *5–6 (S.D. Fla. Jul. 2, 2015). As explained above, Plaintiff's conclusory and superficial allegations fail to identify prior instances where Sgt. Lanza used excessive force. Thus, Plaintiff has not properly pled this theory of municipal liability. As Plaintiff has failed to properly allege a theory of municipal liability under § 1983, the MTD is due to be granted as to Count II.

### B. Negligent Retention Claim

Turning to Count V, Plaintiff appears to allege a state-law claim against the City for the negligent retention of Sgt. Lanza. (Doc. 1. ¶ 71.) The Complaint, however, contains inconsistent allegations, which prevent the Court from assessing the intended claim or the City's arguments for dismissal. Such confusion requires repleader.

Under Florida law, courts have held that a negligent retention claim is cognizable when (1) an employer becomes aware or should become aware of problems with an

employee that indicates his unfitness; and (2) the employer fails to take appropriate action such as investigation, discharge, or reassignment. *See Samedi v. Miami-Dade Cty.*, 134 F. Supp. 2d 1320, 1352-53 (S.D. Fla. 2001); *Watson v. The City of Hialeah*, 552 So. 2d 1146, 1148 (Fla. 3d DCA 1989). Florida law, however, does not recognize a cause of action for negligent retention if the acts of the employee occur within the course and scope of employment. *See City of Boynton Beach v. Weiss*, 120 So. 3d 606, 610 (Fla. 4th DCA 2013); *Watson*, 552 So. 2d at 1148.

Here, Plaintiff, inconsistently, asserts that: (1) Count V is a negligent retention claim against the City; and (2) Sgt. Lanza acted within the course and scope of his employment when arresting her. (Doc. 1, ¶¶ 71, 74.) These conflicting allegations provide a sufficient basis for dismissal.[3] Second, absent the allegation that Sgt. Lanza acted within the course of his employment, Plaintiff insufficiently alleges plausible facts in support her negligent retention claim. While the complaint describes generalized bad behavior on the part of Sgt. Lanza and attributes knowledge to the City, there is no description of the acts, how the City was aware of them, and, most crucially, how the City's alleged failure to act caused Plaintiff's injury. (*See id.* ¶¶ 24, 27.)

Plaintiff's allegations also raise the specter of sovereign immunity. *See* Fla. Stat. 768.28(1). Generally, "a governmental agency is immune from tort liability based upon actions that involve its 'discretionary' functions." *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cty., Fla.*, 402 F.3d 1092, 1117 (11th Cir. 2005) (quoting *Lewis v. City of*

---

[3] Notably, Plaintiff failed to even respond to the City's scope of employment argument (Doc. 21, p. 11).

*St. Petersburg*, 260 F.3d 1260, 1266 (11th Cir. 2001)). Basic "judgmental or discretionary governmental functions are immune from legal action, whereas operational acts are not protected by sovereign immunity." *Pollock v. Fla. Dep't of Highway Patrol*, 882 So. 2d 928, 933 (Fla. 2004). In making this assessment, the Court must ascertain the character of the alleged negligent governmental act. *Id.* A discretionary function, under Florida law, is one in which the challenged act involves the exercise or legislative power such that, were a court to intervene it would "inappropriately entangle itself in fundamental questions of policy and planning.[4] *Cook*, 402 F.3d at 1117-18 (quoting *Henderson v. Bowden*, 737 So. 2d 532, 538 (Fla. 1999)). An "operational" function is one not necessary or inherent in the policy or planning, but rather reflects a secondary decision as to how those polices or plans will be implemented. *Henderson*, 737 So. 2d at 538. Despite these nebulous definitions, the task of determining whether an act is "discretionary" or "operational" is necessarily fact specific. *Storm v. Town of Ponce Inlet*, 866 So. 2d 714, 719 (Fla. 5th DCA 2004).

The lack of specificity of the challenged acts makes the operational versus discretionary analysis impossible. Contrary to the City's argument (Doc. 21, p. 10),

---

[4] Other courts have described a "discretionary," act as one that meets all of the following elements: (1) the action involves a basic governmental policy, program, or objective; (2) the action is essential to the realization or accomplishment of that policy, program or objective; (3) the action requires the exercise of basic policy evaluations, judgments, and expertise on the part of governmental agency involved; and (4) the governmental agency involved possess the requisite constitutional statutory, or lawful authority and duty to do or make the challenged act, omission, or decision. *Lewis*, 260 F.3d at 1264 (citing *Trianon Park Condo. Ass'n, Inc. v. City of Hialeah*, 468 So. 2d 912, 918 (Fla. 1985)).

whether an act is discretionary or operational is not reducible to a one-size-fits all analysis. *See Hemmings v. Jenne*, No. 10-61126-CIV, 2010 WL 4005333, *1, *6-7 (S.D. Fla. 2010) ("negligent hiring, retention, and supervision claims are not always barred by sovereign immunity, because these functions are sometimes deemed operational rather than discretionary . . . depending on the facts"); *see also Horn v. Volusia Cty.*, No. 6:08-cv-18-Orl-19DAB, 2008 WL 977179, *4 (M.D. Fla. Apr. 9, 2008). Indeed, the point is crystalized upon review of the authority addressing the issue. *See Vaden v. Campbell*, No. 4:09cv12-RH/WCS, 2009 WL 1919474, *3–4 (N.D. Fla. July 2, 2009) (finding negligent retention to be "operational"); *Wills v. Dade Cty. Sch. Bd.*, 411 So. 2d 245, 246 (Fla. 3d DCA. 1982) (finding negligent retention to be "operational"); *Cf. Storm*, 866 So. 2d at 719 (finding decision to hire, fire or retain "falls, without question, at the far end of the 'discretionary' basic fundamental decision-making spectrum"); *Napier ex rel. Napier v. Fla. Dep't of Corr.*, No. 09-CV-61158, 2010 WL 2427442, *5 (S.D. Fla. June 16, 2010) (finding insufficient facts to determine whether negligent retention was "operational" or "discretionary").[5] Plaintiff's allegations are insufficiently precise to determine if immunity for discretionary acts is available. Hence, repleader is necessary for this reason as well.

---

[5] *See also Slonin v. City of West Palm Beach, Fla.*, 896 So. 2d 882, 884 (Fla. 4th DCA 2005) ("There is no sovereign immunity barrier to making a claim against a governmental agency for negligent retention . . . .").

Case 6:17-cv-00756-RBD-T_S Document 29 Filed 07/18/17 Page 11 of 11 PageID 123

### C. Attorney Fees

Finally, Defendant seeks dismissal of Plaintiff's claims for attorney fees as to her state-law claims set forth in Counts III–V. Because Plaintiff has withdrawn such claims (Doc. 25, pp. 8–9), the Court finds that the MTD is due to be denied as moot.

### IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant City of Melbourne, Florida and Chief Mimbs' Motion to Dismiss (Doc. 21) is **GRANTED IN PART AND DENIED AS MOOT IN PART.**

    a. The Motion is granted as to Counts II and V (Doc. 1, ¶¶ 38–55, 70–79). Such claims are **DISMISSED WITHOUT PREJUDICE**.

    b. The Motion is denied as moot with respect to Plaintiff's claims for attorney fees set forth in Counts III–V (Doc. 1, pp. 10, 11, 13).

2. On or before, Monday, **July 31, 2017**, Plaintiff may file an amended complaint with respect to Counts II and V that addresses the deficiencies identified in this Order.

3. The Clerk is **DIRECTED** to terminate Steve Mimbs as a party to this action.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on July 18, 2017.



ROY B. DALTON JR.
United States District Judge

Copies to:
Counsel of Record